IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JEROME HICKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-1115-N |
| | § | |
| GEODIS LOGISTICS LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant GEODIS Logistics LLC's ("GEODIS") motion for summary judgment [10]. For the reasons below, the Court denies the motion as to Plaintiff Christopher Hicks's hostile work environment claim, and grants summary judgment to GEODIS on all other claims.

## I. THE EMPLOYMENT DISPUTE

This dispute arises from Plaintiff Hicks's employment with GEODIS. Hicks, an African American male, worked as a Warehouse Operator unloading and moving materials using a forklift and performing related tasks. In January 2019, a new manager named Theresa Marsic began working at the warehouse where Hicks worked. GEODIS terminated Hicks approximately two months later after two employees reported Hicks violated a safety policy in the warehouse.

Hicks filed this lawsuit against GEODIS based on his conflicts with Marsic prior to his termination. Hicks asserts claims under the Texas Commission on Human Rights Act

ORDER – PAGE 1

("TCHRA") for discrimination and retaliation based on race.  TEX. LAB. CODE § 21.001, *et seq*.  Additionally, Hicks brings harassment and hostile work environment claims based on Marsic's treatment of him in the months preceding his termination.

GEODIS states that it fired Hicks because he violated safety protocols by driving a reach truck under the raised forks of another employee's forklift, endangering the lives of himself and the driver of the other forklift.  Def.'s Br. Supp. Mot. Summ. J. 6 [11].  GEODIS moved for summary judgment.

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no

evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III.  THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT AS TO HICKS'S RACE DISCRIMINATION CLAIM

Hicks alleges that GEODIS unlawfully terminated him based on his race in violation of the TCHRA. TEX. LAB. CODE ANN. § 21.051. Because one purpose of chapter 21 of the Texas Labor Code is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments, courts analyze race discrimination claims under the two statutes using the same analytical framework. *Id.* § 21.001; *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021).

ORDER – PAGE 3

### A.  Legal Standard under the McDonnell Douglas Framework

A plaintiff can prove a race discrimination claim under TCHRA with direct evidence of discriminatory intent or by use of circumstantial evidence under the *McDonnell Douglas* burden-shifting framework.  *See Ross*, 993 F.3d at 321 (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to a TCHRA claim).  Hicks does not allege, and the record does not disclose evidence of, direct evidence of discrimination on the part of GEODIS.  Thus, Hicks's case relies on circumstantial evidence and the *McDonnell Douglas* burden-shifting framework applies.

To establish a prima facie case of discrimination, the plaintiff must show that he "(1) was a member of [a] protected class . . ., (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone [outside the protected class] or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class."  *Id.* at 321–22 (quoting *Tex. Tech. Univ. Health Sci. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020)).  In cases where an employer claims to have fired the plaintiff for violating a work rule, the plaintiff can prove the final element of his prima facie case by showing that he did not violate the rule or that employees outside his protected group who engaged in similar acts were not punished similarly.  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the action.  *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021).  If the defendant does that, then the burden shifts back to the plaintiff to provide "substantial evidence indicating that the proffered legitimate

nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

To meet this burden, the plaintiff must show either that (1) the employer's reason is not true and is a pretext for discrimination (pretext alternative) or (2) the employer's reason is true, but it is only one of the reasons for its conduct, and plaintiff's protected characteristic is a motivating factor (mixed-motives alternative). *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). Showing that an alleged work rule violation did not occur is insufficient to prove an employer's reason is pretext, and the plaintiff must also show that the employer did not have a good faith belief that the plaintiff committed the violation. *See Eaglin v. Tex. Children's Hosp.*, 801 F. App'x 250, 257 (5th Cir. 2020) (unpub.) (citing *Mayberry*, 55 F.3d at 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.")).

It is undisputed that GEODIS has met its burden to articulate a legitimate, non-discriminatory reason for Hicks's termination. Thus, for Hicks to succeed on his TCHRA discrimination claim, he must show that GEODIS's reason was mere pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804.

### B.  Hicks Does Not Raise a Fact Issue Regarding Pretext

Assuming Hicks has established a prima facie case, his claim fails because he has not presented evidence to create a reasonable basis to infer GEODIS's proffered reason for his termination is pretextual. Hicks attempts to show pretext by arguing: (1) the safety violation did not occur and could not have happened as GEODIS describes it, and (2) no

ORDER – PAGE 5

harm occurred from the safety violation to support Hicks's termination.  Pl.'s Resp. Br. 13–14 [13].  To support these arguments, Hicks points to his own assessment of the credibility of his accusers, two diagrams of the safety violation incident attached as exhibits to his deposition, and the fact that GEODIS has not explained the absence of surveillance video evidence.  *Id.*

The Court disagrees that this is evidence of pretext because none of Hicks's evidence creates a dispute of fact as to GEODIS's belief that he had violated its workplace safety policies.  In cases "in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but 'whether the employer reasonably believed the employee's allegation and acted on it in good faith.'"  *Jackson v. Cal-Western Pack. Grp.*, 602 F.3d 374, 379 (5th Cir. 2010).  Hicks points to evidence refuting the truth of the allegations that he committed a safety violation.  However, there is no evidence in the record indicating that the decisionmakers involved in Hicks's termination lacked a good faith belief that Hicks had committed such a violation.

The diagrams Hicks presents do not create a dispute of fact as to whether GEODIS acted on a good faith belief that Hicks violated safety rules when it terminated Hicks.[1] Plaintiff's Exhibit 4 is a hand drawn diagram prepared by Hicks during his 2021 deposition describing his narrative of the alleged safety violation, which is not probative of GEOIS's belief that the violation occurred at the time of his termination.  Pl.'s Ex. 4 [14-4]; Pl.'s

---

[1] GEODIS objects to the Court's consideration of these diagrams.  Def.'s Objs. to Pl.'s Summ. J. Evid. 3–4 [15].  The Court determines it is unnecessary to address these objections, because the diagrams still do not create a fact issue on pretext.

ORDER – PAGE 6

Resp. Br. ¶ 5.13.  Plaintiff's Exhibit 3 is a diagram of unexplained origin that in no way

supports the inferences in Hicks's brief that the safety violation could not have occurred,

because it is a crude sketch with no indication that it is drawn to scale.  *See* Pl.'s Ex. 3 [14-

23]; Pl.'s Resp. Br. ¶ 5.12 ("The diagram . . . shows that [Hicks's] vehicle was too wide to

pass between the forklift and the pallet shelving so the incident could not have happened

as [GEODIS] describes it.").  There is no evidence in the record that this diagram reflects

the knowledge or beliefs of the individuals responsible for the decision to terminate Hicks,

and Hicks's unsubstantiated assertion in his brief that the diagram reflects GEODIS's

version of events is not competent summary judgment evidence.  These diagrams are not

evidence that GEODIS terminated Hicks for reasons other than a safety violation reported

by his colleagues or that GEODIS lacked a good faith belief that such a violation occurred.

As for Hicks's arguments regarding the surveillance video, the record contains

nothing more than an unsubstantiated assertion from Hicks's deposition that there were

cameras somewhere in the warehouse.  Dep. of Christopher Hicks 235 [14-8].  When asked

if there are cameras in the aisle where the safety violation allegedly occurred, Hicks

responded "I don't know."  *Id.*  Hicks provides no evidence indicating a camera would

have captured this specific incident or that GEODIS has any obligation to explain why

there is no video in the record to succeed on summary judgment.

Finally, the lack of physical injury or harm resulting from the safety violation,

standing alone, is immaterial.  The unrefuted declarations of multiple GEODIS employees

and GEODIS's disciplinary guidelines show that Hicks's alleged behavior, driving under

the raised forks of a forklift, is a violation of GEODIS's company policy subject to

termination even for a first-time offense.  *See* Def.'s App. 141–42 [12] (Decl. of Brandon Hill); *id.* at 143–44 (Decl. of Theresa Marsic); *id.* at 153 (Disciplinary Guidelines).  It is not the Court's role to second-guess an employer's personnel decisions based on violations of company policy.  Hicks has provided no authority indicating that a lack of resulting harm from a violation of company policy creates a fact issue on pretext warranting a trial.

No reasonable jury could infer from this record that GEODIS's claim that it terminated Hicks for violating company safety policy is pretext for racial discrimination. It is undisputed that multiple employees reported the incident, and the parties have not submitted evidence of contradictory facts regarding GEODIS's belief that these reports were accurate.  Hicks also does not argue and offers no evidence that GEODIS treated other employees committing similar safety violations any differently.  Because Hicks cannot show a fact issue as to pretext, the Court grants summary judgment to GEODIS on Hicks's TCHRA discrimination claim.

## IV.  THE COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT AS TO HICKS'S RETALIATION CLAIM

Next, Hicks argues that GEODIS unlawfully retaliated against him in violation of TCHRA when it terminated him for complaining to other managers about Marsic assigning Hicks certain work duties and her treatment of Hicks when he initially refused to comply. TEX. LAB. CODE ANN. § 21.055.  Hicks's TCHRA retaliation claim also fails due to a lack of factual dispute on pretext.

Claims based on retaliation under TCHRA are subject to the same burden-shifting framework and pretext analysis discussed above.  *Gorman v. Verizon Wireless Tex., L.L.C.*,

753 F.3d 165, 170–71 (5th Cir. 2014) (applying the *McDonnell Douglas* framework to THCRA retaliation claim); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 790 (Tex. 2018) (requiring a showing of but-for causation to establish pretext on THCRA retaliation claim once employer advanced legitimate, nondiscriminatory reason for termination).  Hicks's only evidence of causation for his retaliation claim is the temporal proximity of forty-five days, which is insufficient.  *See* Pl.'s Resp. Br. ¶¶ 5.28–33; *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306–07 (5th Cir. 2020) (finding the "'very close' temporal proximity [of just one week] is sufficient to establish the 'causal connection' element of [a] prima facie case, but it is insufficient to demonstrate pretext" on a retaliation claim at summary judgment).  As explained above, the other evidence Hicks advances does not create a fact issue on pretext because it does not call into question whether GEODIS believed Hicks committed a safety violation.  Thus, even if Hicks can establish a prima facie case of retaliation, he cannot show pretext as a matter of law.  Accordingly, the Court grants summary judgment to GEODIS on Hicks's TCHRA retaliation claim.

## V.  THE COURT DENIES THE MOTION FOR SUMMARY JUDGMENT AS TO HICKS'S HOSTILE WORK ENVIRONMENT CLAIM

Finally, Hicks brings a hostile work environment claim based on a variety of allegations regarding Marsic's treatment of Hicks.  Specifically, Hicks claims Marsic harassed him by making him mop and sweep floors, assigning him "picking" duties, and berating him in front of others when he initially refused to pick.

To establish a hostile work environment claim based on a supervisor's conduct, a plaintiff must prove that (1) he belonged to a protected class; (2) he was subjected to

unwelcome harassment; (3) the harassment was based on the plaintiff's membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment. *Jackson v. Honeywell Intern., Inc.*, 601 F. App'x 280, 287 (5th Cir. 2015) (unpub.) (citing *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc)). It is undisputed Hicks belongs to a protected class. To determine if harassment is severe and pervasive enough to alter the terms or conditions of employment, courts consider "(1) the frequency of the discriminatory conduct; (2) the severity; (3) whether it is physically threatening or humiliating . . . (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the [conduct] undermines the plaintiff's workplace competence." *Id.*

Here, Hicks has raised a fact issue as to whether the alleged conduct constitutes harassment affecting a term, condition, or privilege of employment. At his deposition, Hicks claimed Marsic would tell him to "get off [his] lift and go sweep [or] mop" despite those tasks not being his job function. Dep. of Christopher Hicks 182–83 [14-8]. While Hicks was not sure how many times Marsic told him to mop, he said Marsic asked him to sweep on "a number of occasions" over the short forty-five-day between Marsic's arrival and Hicks's termination. *Id.* Hicks also claimed Marsic told him to perform picking duties he had not completed training for and that she berated him in front of his colleagues when he initially refused. Decl. of Christopher Hicks ¶¶ 6–7 [14-6]. This variety of incidents over such a short period is sufficiently pervasive at the summary judgment stage. *See Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009) (noting the alleged

harassment   occurred   multiple   times   per   week   over   "only   32   days"
and finding the harassment sufficiently pervasive).

GEODIS argues the alleged conduct cannot be so severe as to create a hostile work
environment because Hicks's job description includes "picking duties" and the catch-all
term "other duties as required."  Def.'s Reply Br. 6 [18].  Granting summary judgment for
this reason, especially based on the catch-all term, would allow employers to escape
liability for any claim by an employee alleging he or she was singled out based on a
protected characteristic to perform certain tasks not asked of other employees.  Drawing
inferences in Hicks's favor, whether sweeping and mopping are properly considered
Hicks's ordinary job responsibilities or acts of humiliation is a dispute of fact.
Additionally, Hicks's claim rests on more than which tasks Marsic assigned him because
he also alleges Marsic ignored his lack of proper training and berated him in front of others.
Decl. of Christopher Hicks ¶¶ 6–7.  Considering all the circumstances and viewing the facts
in a light most favorable to Hicks, the Court determines Hicks has raised a fact issue as to
whether Marsic's alleged conduct constitutes harassment sufficiently severe or pervasive
to alter the conditions of his employment.

Finally, Hicks has raised a fact issue regarding whether he was subjected to the
alleged harassment described above due to his race.  Hicks's declaration alleges Marsic
also singled out Trent Hayes, an African American supervisor, by making him mop floors
in front of his subordinates.  Decl. of Christopher Hicks ¶ 5.  Thus, the record contains
allegations that Marsic required multiple African American employees to clean floors
despite that task not being a normal part of their jobs.  Drawing inferences in Hicks's favor,

ORDER – PAGE 11

this evidence that one manager subjected multiple African American male employees to the same potentially humiliating treatment is sufficient to create a fact issue as to whether the alleged harassment occurred due to Hicks's race.  Further, Hicks claimed only one other employee worked in the same role and was asked to pick, and that employee is also an African American male.  Dep. of Christopher Hicks 177 [12]; Def.'s Br. Supp. Mot. Summ. J. 26.  Because GEODIS cannot show there is no dispute of material fact, the Court denies the motion for summary judgment as to Hicks's hostile work environment claim.

## CONCLUSION

Because GEODIS has shown there is no dispute of material fact as to whether GEODIS's proffered reason for termination is pretextual, the Court grants summary judgment to GEODIS on Hicks's TCHRA race discrimination and retaliation claims. However, because there is a dispute of material fact as to whether GEODIS subjected Hicks to a hostile work environment on account of his race, the Court denies GEODIS's motion for summary judgment as to Hicks's hostile work environment claim.

Signed November 16, 2021.

David C. Godbey
United States District Judge

ORDER – PAGE 12